**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 16 2013, 5:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JARED MICHEL THOMAS**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JOHN NEAL CLARK,                    )
                                    )
    Appellant-Defendant,        )
                                    )
       vs.                  )    No. 82A01-1302-CR-69
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.         )

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1209-FC-1136

**October 16, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

John Neal Clark appeals his sentence for conspiracy to commit forgery as a class C felony and argues that his sentence is inappropriate in light of the nature of the offense and his character. We affirm.

FACTS AND PROCEDURAL HISTORY

At some point during the summer of 2012, Clark and Larry Goble worked for All Star Auto Detail, a company owned by Brandon Brucken. Clark and Goble came into possession of business checks for All Star Auto Detail. On September 11, 2012, Clark contacted Jamie Gooch and asked her if she "wanted to make some money" and that he "was looking for somebody that was, that fit close to the description of the ID that he had because they was trying to cash checks." Transcript at 160-161. Clark and Goble drove to Gooch's apartment and showed her the identification, which was a Kentucky driver's license belonging to Samantha Bruce. Although her hair color was different from that of the woman on the license, Gooch was convinced by Clark and Goble to "try and cash a check that they had." Id. at 162.

Clark drove Goble and Gooch to a store which cashed checks, where Goble filled out a check for $1,000 and gave it and the license to Gooch, and Gooch went inside and attempted to cash the check but was told that the company would not cash it because of the amount. Clark drove back to Gooch's apartment building, and Gooch asked Bonita Walden, from whom she rented her apartment, if she would help her cash some checks. Clark and Goble told Walden that Goble "was part owner of the business that they work for and that their business was going down." Id. at 165. Clark then drove Goble, Gooch, and Walden to several locations where Gooch and Walden attempted, unsuccessfully, to

2

cash the checks, and eventually, after another person joined the group and they picked up another vehicle, the group traveled to a branch of Banterra Bank.

Gooch and Walden, each with a check, entered the Banterra Bank branch. Walden handed the check in her possession to the bank teller, who indicated the check was not signed and returned it to Walden, and Walden exited the bank to have it signed. Gooch then presented the check in her possession to the teller. The teller noticed that the check was written to Samantha Bruce by All Star Auto Detail and that the name Samantha Bruce had been signed on the back of the check. The teller compared the signature on the check to the signature on the signature card of the owner of the account which the bank had on file. The teller showed the bank manager the signatures on the check and signature card, and the manager agreed that the signature on the check did not look like that of Brucken, the owner of All Star Auto Detail.

The manager called Brucken, explained the situation, and asked if he could verify that he had written a check to Samantha Bruce, and Brucken responded that he had not written the check. Brucken also confirmed that some of the checks for his company were missing and advised of the check number of the last check he had written. While the manager was on the phone with Brucken, Walden returned with a check which was signed. The manager informed Gooch and Walden that the checks they presented were stolen and that the bank would have to keep them, and the bank made a copy of the driver's license belonging to Bruce. Gooch and Walden exited the bank and left with Clark and the others in the two vehicles.

3

Officers with the Evansville Police Department spoke with Brucken and the bank employees and obtained the checks and a copy of the driver's license as well as surveillance photographs of Gooch and Walden. The officers drove to Walden's apartment, located her at Gooch's apartment, and, as they were speaking with her, Clark, Goble, and Gooch entered the apartment. The police arrested Clark, Goble, and Gooch.

On September 13, 2012, the State charged Clark with conspiracy to commit forgery as a class C felony and theft as a class D felony. The theft charge was dismissed upon motion by the State prior to trial. A jury found Clark guilty of conspiracy to commit forgery as a class C felony.

At the sentencing hearing, Clark's counsel argued that "there's no restitution due," that "[t]he victim, who was his employer, told the Probation Department that he just wanted [] Clark to get his life together" and "[t]hat sounds to me like he's not demanding any kind of harsh punishment," that Clark "didn't forge any checks, he didn't present any checks, Jamie Gooch did," and that Gooch "presented false ID and attempted to get some money." Sentencing Transcript at 14. Clark's counsel argued that the State allowed Gooch to testify for the State and that the State allowed her to plead guilty to identity deception as a class D felony, dismissed a forgery count against her, and recommended the minimum sentence which was six months. Clark's counsel also argued that Walden was never charged and that "[t]he State and the Police accepted her version that she didn't realize there was anything illegal about this even though when she went to the bank and attempted to cash the check, they refused it, she took it out to the car and a man named Larry Go[b]le signed somebody else's name on it, and she took it back into the

4

bank again to try and pass it." Id. at 15. Clark's counsel argued that "the sentences in these cases should be somewhat consistent." Id. He also stated that Goble's case was pending, that he was on work release as a condition of bond, that he had "been revoked on that," and that he was back in the county jail. Id. Clark's counsel stated that "[t]he Probation Department wants eight years . . . , which . . . is far in excess of what he deserves in light of his activities in this case," that he did not "know why Probation Officers even make recommendations," that "they don't know the facts of the case," and that "they're just kind of shooting from the hip and say give him the maximum because he's got a record." Id. at 15-16. He also argued that "[h]e is employed or he's employable." Id. at 16.

Clark stated that he hoped for some leniency so that he could work and provide for his family, that he "know[s] [he] messed up by being involved in this case in some type of manner," and then asked the court: "if you can see it . . . to let me get one shot to actually try to make it this time, house arrest, Work Release, AAPS and DAPS, Drug Court, I'll take all that, and if I mess up one time, you can send me back to prison on it, it's just I need one more chance to actually try to prove to my family before I let them down again 'cause I know I can do it, and I do have employment." Id. at 16-17. Clark stated, with respect to his involvement in the case, that he "was just there" and that he was "going to take full responsibility for [his] involvement in that case." Id. at 17-18. Clark stated that he did not steal the checks, but that he did know about it, and that "[a]s long as [he] didn't say nothing to the boss or anything, [he] was gonna get initial cash funds." Id. at 18. Clark indicated he had two children and a fiancée. Clark's counsel

argued that an appropriate sentence would be eight years with four years executed to work release and four years suspended to probation.

The State argued that Clark was part of the scheme, that he worked for the company, and that he knew the checks were stolen. The State said that Clark was incorrect as to Gooch's sentence, that she was sentenced to two years with six months executed and the balance served through the drug abuse probation services program, and that Gooch did not have Clark's criminal record and was not on parole at the time of the offense like Clark. The State argued that Clark has a lengthy criminal history, including prior felony convictions for dealing in methamphetamine and robbery. The State also noted that Gooch was cooperative, admitted her responsibility, and did not force the State to take her to trial, that Clark did not do those things, and that is why Gooch received a deal.

The trial court found the mitigating circumstances to be that Clark had children who would be affected by the sentence, that he had health issues involving his knee and back, that the crime was non-violent, and that he admitted responsibility to some extent. The court found the aggravating circumstances to be that Clark was on parole at the time of the offense and that he had a criminal history which included convictions for dealing in methamphetamine, robbery, several DUI offenses, and possession of marijuana. The court noted Clark had been previously revoked from the work release program and thus believed that he was not an appropriate candidate for work release. The court also noted that it was not going to sentence Clark to the maximum as it did not think it was

appropriate based on the offense, and sentenced Clark to six years in the Department of Correction.

DISCUSSION

The issue is whether Clark's sentence is inappropriate. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Clark argues that, while he has a fairly extensive criminal history, "the convictions of the other co-conspirators were vastly more lenient" than his sentence. Appellant's Brief at 8. Clark further argues that the majority of his convictions occurred over six years prior to the instant charges, that no restitution was required, and that the victim did not request jail time. Clark also contends that he should not have been considered the worst of the worst of his alleged co-conspirators.[1] The State maintains that Clark fails to

---

[1] Clark also appears to argue, without citation to authority to support his position, that the trial court abused its discretion in sentencing him because the court failed to take into account that there was no restitution required, to take "into consideration as a mitigating circumstance that the victim in this case did not request jail time," and to take into account "the convictions of the alleged co-conspirators as a mitigating circumstance," and that the court "gives no weight to the mitigating circumstances" it found. Appellant's Brief at 11. However, "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate." Mendoza v. State, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007), trans. denied; see also Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (holding that in the absence of a proper sentencing order, we may either remand for resentencing or exercise our authority to review the sentence pursuant to Ind. Appellate Rule 7(B)), reh'g denied; Shelby v. State, 986 N.E.2d 345, 370 (Ind. Ct. App. 2013) (holding that "even if the trial court did abuse its discretion by failing to consider the alleged mitigating factor of residual doubt, this does not require remand for resentencing"), trans. denied. Accordingly, we need not address Clark's contentions that the court abused its discretion in sentencing him if we determine that his sentence is not inappropriate. Even if we were to consider Clark's abuse of discretion arguments, we would not find them to be persuasive. An order of restitution in this case was unnecessary because the

present cogent argument regarding the inappropriateness of his sentence in light of the nature of his offense or character and has waived this court's review of his claim.

Our review of the nature of the offense reveals that Clark and Goble worked for All Star Auto Detail and that Clark contacted Gooch and asked for her help with cashing checks from All Star Auto Detail using Bruce's driver's license. He told Walden that Goble was part owner of a business, and drove Gooch and the others to several locations where Gooch and Walden attempted to cash the checks. Clark waited outside Banterra Bank as Gooch and Walden entered and attempted to cash the checks, and was there when the women exited the bank. Gooch and Walden exited the bank and left with Clark and the others in the two vehicles.

Our review of the character of the offender reveals that Clark stated that he was sorry, has two children, and has some health issues. According to the presentence investigation report (the "PSI"),[2] as a juvenile Clark was adjudicated a delinquent for operating a vehicle with an alcohol concentration equivalent to at least .08 but less than

Banterra Bank personnel discovered that the presented checks had been stolen and Clark never received any money from the bank or from the account of All Star Auto Detail. Further, the record does not contain information related to the sentencing of Clark's co-conspirators, namely, their criminal histories, backgrounds, and any other information which may have been taken into account at their sentencing hearings.

[2] Clark has included his PSI on white paper in his appendix. We remind counsel that Indiana Appellate Rule 9(J) requires that "[d]ocuments and information excluded from public access pursuant to Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)." Administrative Rule 9(G)(1)(b)(viii) provides that "all pre-sentence reports pursuant to Ind. Code § 35-38-1-13" are "excluded from public access" and "confidential." The inclusion of the PSI printed on white paper in the appendix is inconsistent with Trial Rule 5(G), which states, in pertinent part: "Every document filed in a case shall separately identify documents that are excluded from public access pursuant to Admin. R. 9(G)(1) as follows: (1) Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked 'Not for Public Access' or 'Confidential.'" See Hape v. State, 903 N.E.2d 977, 1001 n.13 (Ind. Ct. App. 2009) (observing that the inclusion of the PSI printed on white paper in the appendix is inconsistent with Appellate Rule 9(J) and Trial Rule 5(G)), trans. denied.

.15 in 1999 and theft as a class D felony if committed by an adult in 2000. As an adult, Clark was convicted of public intoxication in 2001; possession of marijuana as a misdemeanor, illegal consumption of an alcoholic beverage, and operating a vehicle while intoxicated as a misdemeanor in 2001; public intoxication in 2004 and 2006; operating a vehicle with alcohol concentration equivalent to .15 or more with a prior as a class D felony and robbery resulting in bodily injury as a class C felony in 2007; and dealing methamphetamine as a class B felony in 2009. The PSI noted that the instant offense is Clark's fourth felony conviction, that he has previously been revoked from parole, and that he was on parole when he committed the instant offense. The PSI also indicated: "The victim stated that the defendant needs to get his life together and stay out of trouble." Appellant's Appendix at 44. The PSI further states that Clark reported that he had worked for All Star Auto Detail for two months prior to his arrest, that he previously worked for another company for four months, that he was previously incarcerated in the DOC for thirty-four actual months, and that he worked for another company for approximately one year. The PSI indicates that the results of Clark's risk assessment show that his overall risk assessment score puts him in the high risk to reoffend category. The PSI also noted the probation department's recommendation that Clark be sentenced to eight years. We also note that Clark received a six-year sentence and not the possible maximum eight-year sentence for a class C felony. See Ind. Code § 35-50-2-6.

Under the circumstances and after due consideration of the trial court's decision and of the record, we conclude that Clark has not sustained his burden of establishing that

9

his sentence of six years is inappropriate in light of the nature of the offense and his character.

## CONCLUSION

For the foregoing reasons, we affirm Clark's sentence for conspiracy to commit forgery as a class C felony.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.